# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**DARLA MORALES, ET AL.**            **CIVIL ACTION**

**VERSUS**            **No. 22-3376**

**MCPHERSON COMPANIES, INC.**            **SECTION I**

## ORDER & REASONS

Before the Court is a motion[1] for summary judgment filed by defendant McPherson Companies, Inc. ("McPherson"). Plaintiffs Paul Morales, III ("Morales") and Darla Morales (collectively, "plaintiffs") oppose[2] the motion. For the reasons below, the Court denies the motion.

## I. FACTUAL BACKGROUND

This dispute arises from a slip and fall incident that took place on November 12, 2021.[3] At that time, Morales was employed by Lakeside Toyota as a used car mechanic.[4] On the day in question, McPherson employee Alvin Ray ("Ray") delivered oil to Lakeside Toyota.[5] The oil was being pumped from the McPherson truck operated by Ray into an oil tank located in the car shop where Morales worked.[6] Morales was sitting in the shop watching television as the oil was being pumped into the tank.[7]

---

[1] R. Doc. No. 24.
[2] R. Doc. No. 31.
[3] R. Doc. No. 24-2, ¶ 1; R. Doc. No. 31-1, ¶ 1.
[4] R. Doc. No. 24-2, ¶ 2; R. Doc. No. 31-1, ¶ 2.
[5] R. Doc. No. 24-2, ¶ 3; R. Doc. No. 31-1, ¶ 3.
[6] R. Doc. No. 24-2, ¶ 4; R. Doc. No. 31-1, ¶ 4.
[7] R. Doc. No. 24-2, ¶ 5; R. Doc. No. 31-1, ¶ 5.

During this process, oil began to spill onto the floor of the shop. Morales noticed that oil was spilling onto the floor.[8] After being alerted to the spill by Morales, Ray went to the truck to turn off the flow of oil, and then returned with floor mats to soak up the oil.[9] The parties dispute the quantity of the oil spilled on the floor and the area of the floor that was affected.[10]

Morales obtained a bucket of "Floor Dry" and began throwing that product on the floor in order to soak up the spilled oil.[11] Morales then slipped and fell in the oil and was injured.[12] Morales subsequently filed this lawsuit, alleging that his damages are attributable to Ray's negligence.[13] Darla Morales, Morales' spouse, also asserts a claim for loss of consortium.[14]

## II.   LEGAL STANDARD

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

---

[8] R. Doc. No. 24-2, ¶ 5; R. Doc. No. 31-1, ¶ 5.
[9] R. Doc. No. 24-2, ¶ 6; R. Doc. No. 31-1, ¶ 6.
[10] *See* R. Doc. No. 24-2, ¶¶ 7–8; R. Doc. No. 31-1, ¶¶ 7–8.
[11] R. Doc. No. 24-2, ¶ 9; R. Doc. No. 31-1, ¶ 9.
[12] R. Doc. No. 24-2, ¶ 12; R. Doc. No. 31-1, ¶ 12.
[13] R. Doc. No. 1.
[14] *Id.* at ¶ 16.

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore*

*Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III. ANALYSIS

Louisiana law provides that a plaintiff in a negligence action must prove the following elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element).

*Farrell v. Circle K Stores, Inc.*, --- So.3d ---, 2023 WL 2550503, at *3 (La. Mar. 17, 2023) (citation omitted).

To determine whether there has been a breach of a duty owed, courts employ a "risk/utility balancing test." *Id.* at *4. This balancing test consist of four factors: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and, (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Id.*

4

In its motion, McPherson argues that Morales cannot succeed on his claims because "the hazardous condition which allegedly caused Mr. Morales to fall was open and obvious" and that McPherson therefore owed no duty to Morales.[15] However, the Supreme Court of Louisiana has recently clarified in *Farrell* that "[t]he question of whether a condition is open and obvious and, thus, not unreasonably dangerous, is an issue of breach, not duty." *Id.* at *9.[16]

The *Farrell* court further noted, however, that in a negligence action such as this one, "[s]ummary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds [applying the risk/utility balancing test] could only agree that the [complained-of] condition was not unreasonably dangerous; [and] therefore, the defendant did not breach the duty owed." *Id.* The court went on to hold that summary judgment was appropriate in that case because the complained-of condition—a puddle of water containing a slippery substance located at the edge of a parking lot—was not unreasonably dangerous. *Id.*

As the moving party, McPherson bears the burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact" and pointing out the absence of evidence supporting plaintiffs' case. *Celotex*, 477 U.S. at 323. It has failed to do so. *Farrell* makes clear that the stated

---

[15] R. Doc. No. 24-1, at 1.
[16] McPherson relies on various other cases in support of the proposition that "a defendant generally does not have a duty to protect against that which is open and obvious." *Perrin v. Ochsner Baptist Med. Ctr., LLC*, --- So.3d ---, 2019 WL 3719546, at *4 (La. Ct. App. Aug. 7, 2019); *Bufkin v. Felipe's La., LLC*, 171 So.3d 851, 859 (La. 2014); *Mentel v. Margavio*, 353 So.3d 312, 317 (La. Ct. App. 2022). However, these cases predate *Farrell*, and *Farrell* clearly holds that that proposition is incorrect.

5

basis of McPherson's motion—that it had no duty to protect against the spill because it was an open and obvious condition—is incorrect. McPherson does not explain why the risk/utility balancing test should nevertheless be resolved in its favor, simply arguing that the facts in *Farrell* are sufficiently similar to those at issue to warrant summary judgment.[17]

Applying the risk/utility balancing test, the Court disagrees that no reasonable jury could find in plaintiffs' favor. The spilled oil "was [not] meant to be there," as it "was not intended nor present by design," and it therefore lacked social utility. *Farrell*, 2023 WL 2550503, at *4. Considering the likelihood and magnitude of the potential harm, the spilled oil presents an obvious slip hazard. However, in *Farrell*, the Louisiana Supreme Court specifically noted that the pool of water in that case "was not located in a customarily traversed area" and that a similar pool "located at the entrance to the store[ ] may ultimately be determined to be unreasonably dangerous." *Id*. The parties agree that, in this case, the oil spill was in Morales' work area. Moreover, as plaintiffs point out, the oil was actively spreading at the time of Morales' fall, further distinguishing *Farrell* and other cases cited by McPherson. *E.g.*, *Perrin*, 2019 WL 3719546, at *1 (plaintiff slipped after walking from a carpet that she knew was wet onto a tiled walkway); *Lafaye v. SES Enters., LLC*, 318 So.3d 1052, 1053 (La. Ct. App. 2018) (plaintiff tripped over "a sanitation hose suspended over a sidewalk").

---

[17] Indeed, McPherson states that it "is not necessary" to "go through each and every factor of the risk/utility test" because the facts of *Farrell* are allegedly similar to those in the instant matter. R. Doc. No. 36, at 3.

6

As to the final two factors, the cost of preventing the spill was likely low.[18] Additionally, Morales slipped in the oil while attempting to clean up the spill, which could be found to be an "act of social utility." *Farrell*, 2023 WL 2550503, at *4. Accordingly, the Court concludes that McPherson's motion should be denied.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED THAT** the motion[19] for summary judgment is **DENIED**.

New Orleans, Louisiana, May 8, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[18] A McPherson representative stated in deposition testimony that its employees are trained to monitor the nozzle at all times while pumping oil, R. Doc. No. 31-4, at 4, and that if Ray "would have maintained his position at the nozzle of the nose . . . once oil started to spill . . . it would have been caught more immediately than it was." *Id.* at 8.

[19] R. Doc. No. 24.